DAG/CJB


IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | **Criminal No. 15-00088-CG** |
| v. | * | **USAO No.: 13R00521** |
| | * | |
| JOHN PATRICK COUCH, M.D., | * | **VIOLATIONS** |
| XIULU RUAN, M.D., | * | 18 U.S.C. § 1962(d) |
| THOMAS JUSTIN PALMER, and | * | 21 U.S.C. § 846 |
| BRIDGETTE WILLIAMS PARKER | * | 18 U.S.C. § 1349 |
| | * | 18 U.S.C. § 1956(h) |
| | * | 18 U.S.C. § 371 |
| | * | 21 U.S.C. § 841(a)(1) |
| | * | 18 U.S.C. § 1957 |
| | * | 42 U.S.C. § 1320a-7b(b) |
| | * | 18 U.S.C. § 2(a) |
| | * | **Forfeiture Notices** |

## SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

## I.  INTRODUCTION

At all times relevant to this Superseding Indictment:

### THE DEFENDANTS

1.  Defendant **JOHN PATRICK COUCH, M.D.** was a Mobile, Alabama physician with a medical degree from the Medical College of Georgia. He was licensed to practice medicine in the State of Alabama, and obtained a DEA number which allowed him to dispense Controlled Substances.

2.  Defendant **XIULU RUAN, M.D.** was a Mobile, Alabama physician with a medical degree from Shandong Medical University, located in Jinan, China. He was licensed to practice medicine in the State of Alabama, and obtained a DEA number which allowed him to dispense Controlled Substances.

3.  Defendant **THOMAS JUSTIN PALMER** was a nurse practitioner who worked

1

for **COUCH** and **RUAN**.

4. Defendant **BRIDGETTE WILLIAMS PARKER** was a nurse practitioner who worked for **COUCH** and **RUAN**.

## PAIN CLINIC AND PHARMACY

5. Together, **COUCH** and **RUAN** owned and co-directed an alleged pain management clinic named Physician's Pain Specialists of Alabama, P.C. ("PPSA"). PPSA had two clinic locations in Mobile, Alabama — one located at 2001 Springhill Avenue, and the other located at 4682 Airport Boulevard. **COUCH** was listed as the registered agent for PPSA.

6. **COUCH** and **RUAN** also co-owned an alleged pharmacy named C&R Pharmacy, which was located adjacent to the PPSA clinic on Airport Boulevard in Mobile, Alabama. **COUCH** was the registered agent for C&R Pharmacy.

## PAIN MANAGEMENT

7. The discipline of pain medicine is an accepted and recognized medical sub-specialty practiced by physicians throughout the United States. Legitimate and qualified pain medicine experts have specialized knowledge, education, training, and experience and utilize a multi-disciplinary approach. Presently, the discipline of pain medicine is recognized by state regulatory boards as a sub-specialty of anesthesiology, physical medicine and rehabilitation, neurology, and psychiatry, which are recognized as primary specialties in the United States. Fellowship training programs exist for the purpose of further education in the sub-specialty of pain medicine, making graduates eligible for board certification in pain medicine.

8. Despite some aspects of legitimate medical practice at PPSA, **COUCH** and **RUAN** ran what was, in essence, a pill mill. Through PPSA, **COUCH** and **RUAN** did little more than prescribe Controlled Substances, including, but not limited to: oxycodone (brand names: Oxycontin and Endocet), oxycodone hydrochloride (brand name: Roxicodone), oxymorphone (brand name: Opana), hydromorphone (brand names: Exalgo and Dilaudid),

2

fentanyl (brand names Subsys, Abstral, Lazanda, and Fentora), morphine (brand names: MsContin and Avinza), and methadone. The prescriptions were primarily for large quantities of Schedule II and III Controlled Substances in large dosages, some of which were diverted and/or abused by drug traffickers and addicts.

## CONTROLLED SUBSTANCES

9.     Defendants **COUCH** and **RUAN** each obtained DEA numbers, which allowed them to dispense Controlled Substances. Between January 1, 2011 and May 20, 2015, **COUCH** and **RUAN** wrote approximately 277,982 prescriptions for Controlled Substances.

10.     The Controlled Substances Act, Title 21, United States Code, Section 801, *et seq.*, (hereinafter CSA) and its implementing regulations set forth which drugs and other substances are defined by law as "Controlled Substances." Those Controlled Substances are then assigned to one of five schedules — Schedule I, II, III, IV, or V — depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

11.     The term "Schedule I" means the drug has no currently-accepted medical use and lacks safety under medical supervision. No prescriptions may be written for Schedule I substances.

12.     The term "Schedule II" means the drug or other substance has a high potential for abuse, the drug has a currently accepted medical use with severe restrictions, and abuse of the drug or other substances may lead to severe psychological or physical dependence. Certain Schedule II drugs have a high potential for abuse and can be crushed and snorted, or dissolved and injected, to get an immediate high. This abuse can lead to addiction, overdose, and sometimes death.

13.     The term "Schedule III" means the drug or other substance has a high potential for abuse, but less than the drugs listed in Schedule II, the drug has a currently accepted medical

3

use with severe restrictions, and abuse of the drug or other substances may lead to severe psychological or physical dependence.

14. The term "Schedule IV" means the drug or other substance has a low potential for abuse relative to the drugs or other substances in Schedule III, the drug or other substance has a currently accepted medical use in treatment, and abuse of the drug or other substances may lead to limited (relative to the drugs or substances in Schedule III) physical dependence or psychological dependence.

15. Title 21, Code of Federal Regulations, Section 1306.04(a) state that a valid prescription for a Controlled Substance must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. An Order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of Section 309 of the Act (21 U.S.C. § 829) and the person knowingly filling such a prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to Controlled Substances.

16. Certified Automation of Reports and Consolidated Orders System (ARCOS) is an automated, comprehensive drug reporting system which monitors the flow of DEA Controlled Substances from their point of manufacture through commercial distribution channels to point of sale or distribution at the dispensing/retail level. ARCOS accumulates these transactions which are then summarized into reports which give investigators in Federal and state government agencies information which can then be used to identify the diversion of Controlled Substances into illicit channels of distribution.

17. **COUCH** and **RUAN** regularly prescribed the following Schedule II controlled substances at PPSA:

A.    **Oxycodone**: The generic name for a highly addictive prescription analgesic.  The use of oxycodone in any form can lead to physical and/or psychological dependence, and abuse of the agent may result in addiction.  It is classified as a Schedule II Controlled Substance, and is sold generically or under a variety of brand names, including Roxicodone, OxyContin, and Percocet.  Its legitimate medical purpose is to treat severe pain.  In 2014, **RUAN** purchased approximately 40% of all of the oxycodone purchased in Alabama.

B.    **Fentanyl**: The generic name for a highly addictive prescription analgesic.  The use of fentanyl in any form can lead to physical and/or psychological dependence, and abuse of the agent may result in addiction.  It is classified as a Schedule II Controlled Substance.  It is sold generically or under a variety of brand names, including Subsys, Abstral, Lazanda, and Fentora, among other names.  Its legitimate medical purpose is to treat severe cancer pain.

C.    **Hydrocodone**: The generic name for a highly addictive prescription analgesic.  The use of hydrocodone in any form can lead to physical and/or psychological dependence, and abuse of the agent may result in addiction.  As of October 6, 2014, hydrocodone is classified as a Schedule II Controlled Substance.  Prior to this date, it was classified a Schedule III Controlled Substance  It is sold generically or under a variety of brand names, including Norco, Vicodin, and Lortab, among other names.  Its legitimate medical purpose is to treat severe pain.

D.    **Morphine**: The generic name for a highly addictive prescription analgesic.  The use of morphine in any form can lead to physical and/or psychological dependence, and abuse of the agent may result in addiction.  It is classified as a Schedule II Controlled Substance.  It is sold generically or under a

variety of brand names, including Avinza, MsContin, and Kadian, among other names. Its legitimate medical purpose is to treat severe pain.

18. In 2013, defendant **RUAN** was ranked nationally in the top 6 purchasers of both oxycodone and morphine. In 2014, defendant **RUAN** was ranked nationally in the top 6 purchasers of morphine, fentanyl, oxycodone, and hydrocodone.

19. Many of the prescriptions issued by the defendants **RUAN** and **COUCH** were illegal because they were not issued for a legitimate medical purpose or not within the usual course of professional medical practice. The dispensing and distribution of Controlled Substances was undertaken primarily for a profit motive.

### THE PPSA ENTERPRISE

20. The PPSA Enterprise, including its leadership, membership and associates, constituted an enterprise, as defined by Title 18, United States Code, Section 1961(4) (the PPSA Enterprise), that is, a group of individuals and legal entities associated in fact. The PPSA Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the PPSA Enterprise. The PPSA Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

21. Members and associates of the PPSA Enterprise primarily operated as a pill mill where numbers of alleged patients procured prescription Controlled Substances under the guise of medical necessity. In addition, members and associates of the PPSA Enterprise engaged in medical billing fraud and other criminal violations.

22. Members of the PPSA Enterprise, including the defendants **COUCH** and **RUAN**, attempted to insulate themselves through the appearance of legitimate medical practice, which included the use of cursory physical exams and urinalysis, among other means and methods. Many of the prescriptions issued by the defendants were illegal because they were not issued for a legitimate medical purpose, and not prescribed within the usual course of professional medical

practice. The dispensing and distribution of Controlled Substances was undertaken primarily for a profit motive.

23.    Members of the PPSA Enterprise also engaged in wide-ranging criminal conduct.

## APPLICABLE FEDERAL LAW

24.    The CSA governs the distribution and dispensing of various listed drugs, including narcotics, that are prescribed by physicians and other licensed health care providers. Licensed physicians and physician extenders may distribute and dispense Controlled Substances if they have a DEA Registration number and if they comply with all DEA regulations and all applicable federal laws.

25.    The CSA assigns legal authority for the regulation of Controlled Substances to the DEA. The statute charges DEA with the prevention, detection, and investigation of the diversion of Controlled Substances from legitimate channels while at the same time ensuring that adequate supplies are available to meet legitimate domestic medical, scientific and industrial needs.

26.    The DEA issues registration numbers to qualifying persons, who are authorized to dispense Controlled Substances. To issue a prescription for a Controlled Substance, a physician must be licensed to practice by a state authority and must have a DEA registration number.

27.    Under the CSA, the term practitioner is defined as a physician . . . registered, or otherwise permitted by the United States or the jurisdiction in which the practitioner practices . . . to distribute, dispense . . . or administer . . . a Controlled Substance in the course of professional practice or research. Every person or entity that handles Controlled Substances must be registered with DEA or be exempt by regulation from registration. The DEA registration grants practitioners federal authority to handle Controlled Substances. However, the DEA registered practitioner may only engage in those activities that are authorized under state law for the jurisdiction in which the practice is located.

28.     The practitioner (physician) is responsible for the proper prescribing and dispensing of Controlled Substances. The practitioner is responsible for ensuring that the prescription conforms to all requirements of the law and regulations, both federal and state. Controlled Substances may only be distributed or dispensed lawfully in the manner prescribed by the mechanism created by the CSA.

29.     Provisions of the CSA mandate that the person or entity registered with DEA must be able to account for all Controlled Substances which have been received, distributed, dispensed or disposed.

### BILLING REQUIREMENTS

30.     A National Provider Identifier ("NPI") is a unique billing number assigned to physicians, as well as to physician extenders who have the capability of billing for patient services. The unique NPI under which a bill is submitted is a critical component used to determine whether a particular patient service will be reimbursed, and if so, for how much. Physicians are typically reimbursed at a higher rate than physician extenders.

31.     Defendants **COUCH** and **RUAN** both had their own unique NPIs.

32.     Defendants **COUCH** and **RUAN** both employed physician extenders, such as physician's assistants ("PA"), certified registered nurse practitioners ("CRNP"), and certified registered nurse anesthetists ("CRNA") at PPSA. The physician extenders at PPSA also had their own unique NPIs.

33.     One of the insurance companies billed by PPSA, Blue Cross/Blue Shield of Alabama ("BC/BS"), required claims to be billed under the name and NPI of the physician or physician extenders who actually rendered the service. The BC/BS billing guidelines state,

> "Under no circumstances should services performed solely by a [physician extender] be billed under a physician's name and NPI. However, a physician may bill for these services under his/her name and NPI if the physician also sees and renders services to the patient, reviews the notes of the physician extender, and concur with the findings."

These guidelines were in place, because BC/BS reimbursed at a higher rate for services provided by a physician, as opposed to the same services provided by a physician extender.

34.　　BC/BS, Tri-Care, United Healthcare, and Medicare, among other insurance companies who provide healthcare coverage, are "healthcare benefits programs" as that term is defined in Title 18, United States Code, Section 24(b).

<u>UNDERCOVER ACTIVITY</u>

35.　　A DEA Task Force Officer ("TFA") acted in an undercover capacity (hereinafter "UCA 1") as a patient seeking pain medication. On August 5, 2014, UCA 1 had an initial "patient" visit with **COUCH** at the PPSA Springhill location in Mobile, Alabama. UCA 1 saw **COUCH** for a total of 43 seconds and was prescribed Roxicodone (oxycodone), a Scheduled II Controlled Substance, by **COUCH**.

36.　　On September 8, 2014, UCA 1, who was scheduled to have an appointment with **COUCH**, was seen instead by a co-conspirator employee, who was not a medical doctor and who was not authorized to prescribe or dispense Controlled Substances, at the Springhill PPSA location in Mobile, Alabama. UCA 1 was provided a prescription for Roxicodone (oxycodone), a Scheduled II Controlled Substance, which appeared to have been signed by **COUCH**. UCA 1 did not see, nor was he treated by, **COUCH** during this visit.

37.　　On November 5, 2014, UCA 1, who was scheduled to have an appointment with **COUCH**, was seen instead by a co-conspirator employee, who was not a medical doctor and who was not authorized to prescribe or dispense Controlled Substances, at the Springhill PPSA location in Mobile, Alabama. UCA 1 was provided a prescription of Roxicodone (oxycodone), a Scheduled II Controlled Substance, which was predated and appeared to have been signed by **COUCH**. This prescription was for a larger quantity of Roxicodone tablets than UCE 1 was prescribed during his first two visits. UCA 1 did not see, nor was he treated by, **COUCH** during this visit.

38.     On January 29, 2015, UCA 1, who was scheduled to have an appointment with **COUCH**, was seen instead by a co-conspirator employee, who was not a medical doctor and who was not authorized to prescribe or dispense Controlled Substances, at the Springhill PPSA location in Mobile, Alabama. UCA 1 was provided a prescription for Roxicodone (oxycodone), a Scheduled II Controlled Substance, which appeared to have been signed by **COUCH**. UCA 1 did not see, nor was he treated by, **COUCH** during this visit.

## II.     CHARGES

### COUNT ONE
(RICO CONSPIRACY)
18 U.S.C. § 1962(d)

39.     The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

### THE PPSA ENTERPRISE

40.     Beginning at least in or about 2011 and continuing through or about May 20, 2015, the exact dates being unknown, in the Southern District of Alabama and elsewhere, defendants **JOHN PATRICK COUCH, M.D., XIULU RUAN, M.D.**; entities PPSA and C&R Pharmacy; and others known and unknown to the Grand Jury, constituted an Enterprise within the meaning of Title 18, United States Code, Section 1961(4), that is, a group of individuals and entities associated in fact. The PPSA Enterprise constituted an ongoing organization, the members and associates of which functioned as a continuing unit for a common purpose of achieving the objectives of the PPSA Enterprise.

### PURPOSES OF THE ENTERPRISE

41.     The purpose of the PPSA Enterprise included the following:

    A.     Providing the PPSA Enterprise and its leaders, members and associates with an expanding base of patients for narcotics distribution;

B.    Generating, preserving and protecting the PPSA

Enterprise's profits and patient base through acts of, among other

things, healthcare fraud and kickbacks;

C.    Promoting and enhancing the PPSA Enterprise and

its leaders, members and associates activities;

D.    Enriching the leaders, members and associates of

the PPSA Enterprise financially; and

E.    Concealing and otherwise protecting the criminal

activities of the PPSA Enterprise and its participants from

detection and prosecution.

## MEANS AND METHODS OF THE ENTERPRISE

42.    Defendants **COUCH** and **RUAN** co-owned and co-managed PPSA and C&R

Pharmacy.  Defendants **COUCH** and **RUAN** were aware that individuals would travel from

various states, including Tennessee, and Kentucky, to Alabama in order to illegally obtain

Controlled Substances.  Defendants **COUCH** and **RUAN** were aware that individuals requested

prescriptions of large quantities of Schedule II and III Controlled Substances.  Defendants

**COUCH** and **RUAN** were aware that patients could sell, illegally inject, snort, crush and smoke

Schedule II and III Controlled Substances.

43.    Defendants **COUCH** and **RUAN** operated the PPSA pain management clinics in

order to generate criminal proceeds through the illegal distribution and dispensing of Controlled

Substances by means of prescriptions or orders without a legitimate medical purpose and outside

the usual course of professional practice.  Defendants **COUCH** and **RUAN** conspired to insulate

the PPSA Enterprise members from criminal prosecution by creating the appearance of a

legitimate medical practice.  **RUAN** understood that since a complaint of pain is subjective, it

would be easy to attempt to justify the illegal prescription of large quantities of Controlled

Substances through the use of diagnostic tests. Defendants **RUAN** and **COUCH** would typically require such individuals to provide a urine sample during an office visit. The Defendants **RUAN** and **COUCH** understood that such activities were not conducted for a legitimate medical purpose, but rather to generate profits, prevent and/or obstruct law enforcement scrutiny and to insulate themselves and their co-conspirators from prosecution.

44.     The Defendants **RUAN** and **COUCH** established a pharmacy, C & R Pharmacy, in order to illegally distribute and dispense Controlled Substances to the individuals receiving prescriptions from the clinics. Defendant **RUAN** also arranged for the dispensing of Controlled Substances directly from one PPSA clinic location to Workers Compensation patients in order to generate large criminal proceeds to himself and **COUCH**.

45.     Other co-conspirators would forge the name of Defendant **COUCH** in order to expedite the dispensing and sale of Controlled Substances for the PPSA Enterprise.

46.     Defendants **RUAN** and **COUCH** were aware that large amounts of criminal proceeds could be generated through the establishment and operation of an illegal pain management clinic. The defendants **RUAN** and **COUCH** conspired to illegally facilitate and cause the distribution and dispensing of Controlled Substances to individuals without a legitimate medical purpose.

47.     The Defendants **RUAN** and **COUCH** would refrain from individualized and particularized treatment plans for a number of patients in order to expedite examinations and the illegal dispensing of Controlled Substances. The defendants understood that the majority of individuals seeking Controlled Substances would allege complaints of neck or back pain.

48.     Defendant **XIULU RUAN** and co-conspirators would typically require that a patient provide a urine sample every 60 to 90 days during the patient's visit at PPSA. These point-of-care urine drug screen (herein after "UDS") would be conducted in order to make the clinic and PPSA's activities appear to be proper and to ensure that the prescription of Controlled

Substances appeared to be legitimate.

49.     **RUAN, COUCH** and the co-conspirators did not routinely use the UDS for their intended purpose, which was to determine whether a patient was taking the medications they had been prescribed and to ensure that the patient was not taking medications not prescribed to them. Regardless of the results of the UDS, the patients' urine samples were sent to outside laboratories for a more expensive gas chromatography-mass spectrometer (herein after "GC/MS") analysis. The GC/MS analyses were billed to the patients' healthcare insurance providers, to include but not limited to Blue Cross/Blue Shield of Alabama, under the false pretenses that they were necessary tests. However, patients received their prescriptions before the urine was even sent off for the GC/MS test. Furthermore, even when GC/MS analysis reports showed that drugs prescribed to patients were not in their system — a red-flag that the patient was diverting the drugs — these patients often continued to receive this same drug the following month. The primary purpose for **COUCH** and **RUAN** ordering the GC/MS analyses was that UDS tests were reimbursed to PPSA at cost, but GC/MS analyses were reimbursed to PPSA at extremely high rates. Thus, **COUCH** and **RUAN** ordered thousands of unnecessary GC/MS analyses under false pretenses to increase their profits.

50.     Patient services performed by PPSA physician extenders were fraudulently billed to healthcare benefits programs, under the NPIs of **COUCH** and **RUAN**. This was done because healthcare providers typically paid more in reimbursement for office visits or procedures handled by the physician, as opposed to a physician extender, such as a nurse. **COUCH** and **RUAN** knew billing claims falsely bearing their NPIs were being submitted to patients' insurance providers. Members of the conspiracy, both known and unknown to the Grand Jury, fraudulently submitted claims for patient visits with **COUCH** or **RUAN**, which had, in fact, been patient visits with a PPSA Physician Extender, rather than a doctor. The reimbursements for this "up-coding" of services resulted in PPSA being paid more per patient visit by certain healthcare

providers, than the payment to which PPSA and the doctors were entitled.

51.     The defendants **RUAN** and **COUCH** agreed to compensate some of the employee co-conspirators per patient seen in order to induce the co-conspirators to inappropriately examine as many individuals as possible, thereby, generating more money for the Enterprise.

52.     The defendants **RUAN** and **COUCH** and employee co-conspirators would perform a minimal and cursory physical examination of the individuals in order to insulate the co-conspirators and to make their activities appear legitimate. The defendants **RUAN** and **COUCH** and employee co-conspirators would examine each patient for the minimal amount of time possible in order to examine the largest number of patients each day and to generate the largest amount of criminal proceeds for the PPSA Enterprise.

53.     Employee co-conspirators would at times forge **COUCH's** signature on prescriptions in order to dispense Controlled Substances from the clinic and C&R Pharmacy.

54.     **COUCH** and **RUAN** increased their profits by inducing Industrial Pharmacy Management ("IPM"), and later, Comprehensive RX Management ("CRM"), to pay them kickbacks in return for using their medical services, having threatened IPM & CRM with taking their business elsewhere. This inducement was accomplished by **RUAN** soliciting kickbacks for himself and **COUCH**. **RUAN** and **COUCH** increased their profits by receiving these kickbacks in exchange for dispensing Controlled Substances provided by IPM, and later CRM, to workers' compensation patients. Some of the patients were insured through federal healthcare programs. The defendants **RUAN** and **COUCH** were paid an agreed upon monthly amount from IPM, and subsequently from CRM, for dispensing the Controlled Substances. These monthly checks to **RUAN** and **COUCH** were delivered to them by an interstate commercial carrier. Defendant **RUAN** requested that monthly kickback checks be made payable to one of his companies and be mailed to his residence in Mobile, Alabama rather than to the PPSA clinics.

55.     The defendant **RUAN** would verify, frequently by e-mail, with Christopher

Manfuso, who is not named as a defendant herein; who worked for IPM, and subsequently owned CRM; and who did not live in the State of Alabama, which Controlled Substances resulted in a higher reimbursable to PPSA and the defendants and, based on that fact, **RUAN** requested and ordered those Controlled Substances to be delivered to PPSA's dispensary at the PPSA Springhill Avenue location in Mobile, Alabama.

56.     Controlled Substances were delivered to the PPSA Springhill Avenue location in Mobile, Alabama, by a commercial interstate carrier, to include but not limited to FedEx, and the United States Postal Service. Thereafter, defendants **RUAN** and **COUCH** and other members of the conspiracy, would dispense the Controlled Substances based on the false representation that the Controlled Substances, with higher reimbursables, were the medications necessary to treat the Worker's Compensation patients.

57.     The agreement between these parties was that **RUAN** and **COUCH** would receive a guaranteed monthly payment and an additional percent of the profits generated by his dispensing in house medications, to include Scheduled II and II, Controlled Substances, to patients which had been provided him by IPM, and later, CRM.

58.     The defendants **COUCH** and **RUAN** set up and maintained an online PPSA account with Blue Cross/Blue Shield ("BC/BS"), and other healthcare providers, so as to electronically submit medical claims and so as to be reimbursed electronically by BC/BS, and other healthcare providers.

59.     Specifically, as part of said conspiracy, members of the conspiracy, both known and unknown to the Grand Jury, fraudulently procured electronic payment from healthcare providers, to which they were not entitled. The submission of bills to healthcare providers and the payment from the healthcare providers caused interstate wire transmissions, to include e-mails, and electronic wire transfers, to be sent to and from the state of Alabama to places outside the state of Alabama, to include the Southern District of Alabama. Members of the conspiracy

15

would also use or cause to be used commercial interstate carriers and the United States Postal Service, and would use or cause to be used interstate wire communications, that is e-mails and telephone calls, to be used for other purposes in furtherance of said scheme and artifice to defraud.

## THE CONSPIRACY

60.     During at least in or about 2011 and continuing thereafter through at least in or about May 20, 2015, the exact dates being unknown, in the Southern District of Alabama, Southern Division, and elsewhere, the defendants:

### JOHN PATRICK COUCH, M.D. and
### XIULU RUAN, M.D.

being persons employed by and associated with the PPSA Enterprise, which PPSA Enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly, willfully and unlawfully combine, conspire, confederate, and agree, together and with each other, and with persons known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the PPSA Enterprise, through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and (5), consisting of:

## THE PATTERN OF RACKETEERING ACTIVITY

61.     The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), through which the defendants and their co-conspirators agreed to conduct and participate in the conduct of the affairs of the PPSA Enterprise consisted of:

A.     Multiple offenses involving dealing in Controlled Substances in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and multiple acts indictable under:

B.     Title 18, United States Code, Section 1343 (Relating to Wire Fraud); and

C.     Title 18, United States Code, Section 1341 (Relating to Mail Fraud).

16

It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the PPSA Enterprise.

62.     All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO
(CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCES)
21 U.S.C. § 846

63.     The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

64.     Beginning in or about March 2011, and continuing thereafter through May 20, 2015, in the Southern District of Alabama and elsewhere, the defendants,

**JOHN PATRICK COUCH, M.D.,
XIULU RUAN, M.D.,
THOMAS JUSTIN PALMER, and
BRIDGETTE WILLIAMS PARKER**

conspired with each other and with others, both known and unknown to the Grand Jury, to knowingly and unlawfully distribute and dispense, possess with intent to distribute and dispense, and cause to be distributed and dispensed, Schedule II and III Controlled Substances, including, but not limited to: oxycodone (brand names: Oxycontin and Endocet), oxycodone hydrochloride (brand name: Roxicodone), oxymorphone (brand name: Opana), hydromorphone (brand names: Exalgo and Dilaudid), fentanyl (brand names Subsys, Abstral, Lazanda, and Fentora), morphine (brand names: MsContin and Avinza), methadone, and hydrocodone, by means of prescriptions, among other means and methods, outside the usual course of professional medical practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1).

65.     All in violation of Title 21, United States Code, Section 846.

## COUNT THREE
### (CONSPIRACY TO COMMIT HEALTHCARE FRAUD)
### 18 U.S.C. § 1349

66. The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

67. Beginning in or about January 2011, and continuing through May 20, 2015, in the Southern District of Alabama, Southern Division, and elsewhere, the defendants,

### JOHN PATRICK COUCH, M.D. and
### XIULU RUAN, M.D.,

did willfully, knowingly, and unlawfully combine, conspire, confederate, and agree with each other and others, both known and unknown to the Grand Jury, to commit certain offenses against the United State, to wit:

> to knowingly and willfully execute, and attempt to execute a scheme and artifice to defraud a healthcare benefits program, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a healthcare benefits program in connection with the delivery of and payment for healthcare benefits, items, and services, in violation of Title 18, United States Code, Section 1347(a).

### OBJECTIVE OF THE CONSPIRACY

68. The objective of the conspiracy was to unlawfully increase the reimbursements PPSA, and thus **JOHN PATRICK COUCH, M.D.** and **XIULU RUAN, M.D.**, received from healthcare benefits programs.

### MANNER AND MEANS

69. The manner and means used to achieve this objective includes, but was not limited to, the following:

A. During patient visits at PPSA, patients were required to provide a urine sample for a point-of-care urine drug screen (herein after "UDS"). The purpose of the UDS was to determine whether a patient was taking the

medications they had been prescribed and to ensure that the patient was not taking medications not prescribed to them. However, after running the in-house UDS, the patients' urine samples were sent to outside laboratories for a more expensive gas chromatography-mass spectrometer (herein after "GC/MS") analysis. The GC/MS analyses were billed to the patients' healthcare insurance providers, to include but not limited to Blue Cross/Blue Shield of Alabama, under the false pretenses that they were medically necessary tests. However, the primary purpose for **COUCH** and **RUAN** ordering the GC/MS analyses was that UDS tests were reimbursed to PPSA at cost, but GC/MS analyses were reimbursed to PPSA at extremely high rates. Thus, **COUCH** and **RUAN** ordered thousands of unnecessary GC/MS analyses under false pretenses to increase their profits.

B.     Patient services performed by PPSA physician extenders were fraudulently billed to healthcare benefits programs, to include under the NPIs of **COUCH** and **RUAN**. **COUCH** and **RUAN** knew billing claims falsely bearing their NPIs were being submitted to patients' insurance providers.

70.     All in violation of Title 18, United States Code, Section 1349.

## COUNT FOUR
(CONSPIRACY TO COMMIT MONETARY TRANSACTIONS
IN PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY)
18 U.S.C. § 1956(h)

71.     The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

72.     From on or about March 5, 2011, through in or about May 20, 2015, in the Southern District of Alabama, and elsewhere, the defendant,

### XIULU RUAN, M.D.,

aided and abetted by Christopher Manfuso, who is not named as a defendant herein, and by

others, both known and unknown to the Grand Jury, did knowingly conspire, confederate, and agree with other persons, both known and unknown to the Grand Jury, to commit an offense against the United States, in violation of Title 18, United States Code, Section 1957, to wit: to knowingly engage and attempt to engage, in monetary transactions by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, among other means and methods, transferring funds from bank accounts to other individuals by wire transfers, such property having been derived from a specified unlawful activity, that is, violations of and conspiracies to violate Title 18, United States Code, Section 1349(conspiracy to commit healthcare fraud), and 371(conspiracy to violate the anti-kickback statutes); and Title 21, United States Code, Section 846 (conspiracy to distribute Controlled Substances).

73.     All in violation of Title 18, United States Code, Section 1956(h).

## COUNT FIVE
(CONSPIRACY TO VIOLATE ANTI-KICKBACK STATUTES)
18 U.S.C. § 371

74.     The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

75.     From in or about March 5, 2011, to and continuing through in or about May 20, 2015, in the Southern District of Alabama, and elsewhere, the defendants,

**JOHN PATRICK COUCH and
XIULU RUAN, M.D.,**

did willfully, knowingly, and unlawfully combine, conspire, confederate, and agree together with each other and other persons, both known and unknown to the Grand Jury, to commit certain offenses against the United States, to-wit:

> to knowingly and willfully offer, pay, solicit, and receive any remuneration (including any kickback, bribe, or rebate), directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be

made in whole or in part under a Federal health care program, and in return for purchasing, leasing, ordering, and arranging for or recommending purchasing, leasing, and ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program. In violation of Title 42, United States Code, Section 1320a-7b(b).

## OBJECTIVE OF THE CONSPIRACY

76. The objective of the conspiracy was to increase profits earned by defendants **COUCH** and **RUAN**, and PPSA.

## MANNER AND MEANS

77. **COUCH** and **RUAN** increased their profits by inducing Industrial Pharmacy Management (IPM), and later, Comprehensive RX Management (CRM), to pay them kickbacks. This inducement was accomplished by **RUAN** knowingly and willfully soliciting kickbacks for himself and **COUCH**, in the form of payments. **RUAN** and **COUCH** increased their profits by knowingly and willfully receiving these kickbacks in exchange for prescribing Controlled Substances provided by IPM, and later CRM, to workers' compensation patients. Some of the patients were insured through federal healthcare programs.

78. The agreement between these parties was that **RUAN** and **COUCH** would receive a guaranteed monthly payment and an additional percent of the profits generated by his dispensing in house medications, to include Scheduled II and II, Controlled Substances, to patients, which medications had been provided him by IPM, and later, CRM.

## OVERT ACTS

79. On or about September 20, 2012, **COUCH** received a check numbered 11667, payable to John Patrick Couch, M.D., from IPM, in the amount of $38,543.70.

80. On or about February 25, 2013, **RUAN** received a check numbered 12649, payable to Ruan Companies, LLC, from IPM, in the amount of $53,000.00.

81. On or about September 18, 2013, **COUCH** received a check numbered 13570, payable to Physicians Compounding Solutions, LLC, from IPM, in the amount of $21,860.95.

21

82.     On or about August 15, 2014, **COUCH** received a check number 1280, payable to Physicians Compounding Solutions, LLC, from CRM, in the amount of $33,020.85.

83.     On or about November 18, 2014, **RUAN** received a check numbered 1452, payable to Ruan Companies, LLC, from CRM, in the amount of $80,000.00.

84.     On or about January 21, 2015, **RUAN** received a check numbered 1555, payable to Ruan Companies, LLC, from CRM, in the amount of $80,000.00.

85.     All in violation of Title 18, United States Code, Section 371.

## COUNT SIX
(CONSPIRACY TO COMMIT WIRE AND MAIL FRAUD)
18 U.S.C. § 1349

86.     The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

87.     From on or about January 1, 2011, to on or about May 20, 2015, in the Southern District of Alabama, Southern Division, and elsewhere, the defendants,

### JOHN PATRICK COUCH, M.D. and
### XIULU RUAN, M.D.,

did conspire with one another and with others, both known and unknown to the Grand Jury, and Christopher Manfuso, who is not named as a defendant herein, to execute and attempt to execute a scheme and artifice to defraud, described below, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to wit: (1) Wire Fraud in violation of Title 18, United States Code, Section 1343, and (2) Mail Fraud in violation of Title 18, United States Code, Section 1341.

### OBJECT OF THE CONSPIRACY

88.     The objects of the conspiracy, among others, were to procure payments from healthcare providers to which PPSA and the defendants were not entitled by false

representations; and to procure payments for dispensing Controlled Substances to Workers Compensation patients, which Controlled Substances were selected because of the higher reimbursable to the defendants rather than for the needs of the patients.

## MANNER AND MEANS OF THE CONSPIRACY

89.    It was part of the conspiracy that:

A.    The defendants **COUCH** and **RUAN** set up and maintained an online PPSA account with Blue Cross/Blue Shield ("BC/BS"), and other healthcare providers, so as to electronically submit medical claims and so as to be reimbursed electronically by BC/BS, and other healthcare providers.

B.    Members of the conspiracy, both known and unknown to the Grand Jury, fraudulently submitted claims for patient visits with **COUCH** or **RUAN**, which had, in fact, been patient visits with a PPSA Physician Extender, rather than a doctor.  The reimbursements for this "up-coding" of services resulted in PPSA being paid approximately 30% more per doctor visit by BCBS, and other healthcare providers, than the payment to which PPSA and the doctors were entitled.

C.    The defendant **RUAN** would verify, frequently by e-mail, with Christopher Manfuso, who is not named as a defendant herein; who worked for IPM, and subsequently owned CRM; and who did not live in the State of Alabama, which Controlled Substances resulted in a higher reimbursable to PPSA and the defendants and, based on that fact, **RUAN** requested and ordered those Controlled Substances to be delivered to PPSA's dispensary at the PPSA Springhill Avenue location in Mobile, Alabama.

D.    Controlled Substances were delivered to the PPSA Springhill Avenue location in Mobile, Alabama, by a commercial interstate carrier, to

include but not limited to FedEx, and the United States Postal Service. Thereafter, defendants **RUAN** and **COUCH** and other members of the conspiracy, would dispense the Controlled Substances based on the false representation that the Controlled Substances, with higher reimbursables, were the medications necessary to treat the Worker's Compensation patient.

E.     The defendants **RUAN** and **COUCH** were paid an agreed upon monthly amount from IPM, and subsequently from CRM, for dispensing the Controlled Substances. These monthly checks to **RUAN** and **COUCH** were delivered to them by an interstate commercial carrier.

F.     In carrying out their scheme, members of the conspiracy would use or cause to be used commercial interstate carriers and the United States Postal Service, and would use or cause to be used interstate wire communications, that is e-mails and telephone calls, to be used for other purposes in furtherance of said scheme and artifice to defraud.

G.     Specifically, as part of said conspiracy, members of the conspiracy, both known and unknown to the Grand Jury, fraudulently procured electronic payment from BCBS, and other healthcare providers, to which they were not entitled. The submission of bills to BCBS and the payment from BCBS caused wire transmissions, to include e-mails, and electronic wire transfers, to be sent to and from the state of Alabama to places outside the state of Alabama, to include the Southern District of Alabama.

90.     All in violation of Title 18, United States Code, Section 1349.

### COUNT SEVEN
(DISTRIBUTION OF CONTROLLED SUBSTANCES; AIDING & ABETTING)
21 U.S.C. § 841(a)(1), 18 U.S.C. § 2(a)

91.     The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding

Indictment as if fully set forth herein.

92.　　On or about August 5, 2014, in the Southern District of Alabama, Southern Division, the defendant,

### JOHN PATRICK COUCH, M.D.,

aided and abetted by others both known and unknown to the Grand Jury did distribute and dispense, possess with intent to distribute and dispense, and cause to be distributed and dispensed, a Schedule II Controlled Substance, to wit: oxycodone (brand name: Roxicodone) by means of prescriptions, among other means and methods, outside the usual course of professional medical practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2(a).

### COUNT EIGHT
(DISTRIBUTION OF CONTROLLED SUBSTANCES; AIDING & ABETTING)
21 U.S.C. § 841(a)(1), 18 U.S.C. § 2(a)

93.　　The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

94.　　On or about September 8, 2014, in the Southern District of Alabama, Southern Division, the defendant,

### JOHN PATRICK COUCH, M.D.,

aided and abetted by others both known and unknown to the Grand Jury did distribute and dispense, possess with intent to distribute and dispense, and cause to be distributed and dispensed, a Schedule II Controlled Substance, to wit: oxycodone (brand name: Roxicodone) by means of prescriptions, among other means and methods, outside the usual course of professional medical practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2(a).

## COUNT NINE
(DISTRIBUTION OF CONTROLLED SUBSTANCES; AIDING & ABETTING)
21 U.S.C. § 841(a)(1), 18 U.S.C. § 2(a)

95.     The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

96.     On or about November 5, 2014, in the Southern District of Alabama, Southern Division, the defendant,

### JOHN PATRICK COUCH, M.D.,

aided and abetted by others both known and unknown to the Grand Jury did distribute and dispense, possess with intent to distribute and dispense, and cause to be distributed and dispensed, a Schedule II Controlled Substance, to wit: oxycodone (brand name: Roxicodone) by means of prescriptions, among other means and methods, outside the usual course of professional medical practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2(a).

## COUNT TEN
(DISTRIBUTION OF CONTROLLED SUBSTANCES; AIDING & ABETTING)
21 U.S.C. § 841(a)(1), 18 U.S.C. § 2(a)

97.     The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

98.     On or about January 29, 2015, in the Southern District of Alabama, Southern Division, the defendant,

### JOHN PATRICK COUCH, M.D.,

aided and abetted by others both known and unknown to the Grand Jury did distribute and dispense, possess with intent to distribute and dispense, and cause to be distributed and dispensed, a Schedule II Controlled Substance, to wit: oxycodone (brand name: Roxicodone) by means of prescriptions, among other means and methods, outside the usual course of professional medical practice and not for a legitimate medical purpose, in violation of Title 21,

United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2(a).

## COUNTS ELEVEN THROUGH THIRTEEN
(MONETARY TRANSACTIONS IN PROPERTY DERIVED FROM
SPECIFIED UNLAWFUL ACTIVITY, AND AIDING & ABETTING)
18 U.S.C. § 1957, 18 U.S.C. § 2(a)

99.     The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

100.     On or about the dates set forth below, in the Southern District of Alabama, Southern Division, the defendant,

### XIULU RUAN, M.D.,

aided and abetted by others, both known and unknown to the Grand Jury, knowingly engaged and attempted to engage in the following monetary transactions by, through and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000; that is the deposit, withdrawal, transfer, and exchange of U.S. currency, funds, or monetary instruments, such property having been derived from a specified unlawful activity, namely violations of Title 18, United States Code, Section 1341(mail fraud), 1343(wire fraud), 1349(federal healthcare fraud) and 371(conspiracy to commit federal healthcare fraud); and Title 21, United States Code, Section 846 (conspiracy to distribute Controlled Substances).

101.     With respect to Counts Eleven through Thirteen set forth below, **RUAN** caused funds to be wired from the bank accounts identified below to the individuals and the accounts listed in the "Recipient" column.

| Count | Date | Originating Financial Institution and Account | Recipient | Amount |
|-------|------|-----------------------------------------------|-----------|--------|
| Eleven | 08/14/2014 | Wire transfer from State Bank & Trust Acct. # ending 5553, in the name of XLR Exotic Autos LLC, Mobile, Alabama | JPMorgan Chase Bank, N.A., Acct. # ending 9273, Dallas, Texas | $124,355.87 |
| Twelve | 09/26/2014 | Wire transfer from State Bank & Trust Acct. # ending 5553, in the name of XLR Exotic Autos LLC, Mobile, | Comerica Bank Acct. # ending 1629, San Diego, California | $110,000.00 |

| | | Alabama | | |
|---|---|---|---|---|
| Thirteen | 04/27/2015 | Wire transfer from State Bank & Trust Acct. # ending 5553, in the name of XLR Exotic Autos LLC, Mobile, Alabama | Bank of America Bank Acct. # ending 6824, Boca Raton, Florida | $55,500.00 |

102.　All in violation of Title 18, United States Code, Sections 1957 and 2(a).

## COUNTS FOURTEEN THROUGH SIXTEEN
### Anti-Kickback Statute Violations
42 U.S.C. §1320a-7b(b)

103.　The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

104.　From on or about March 5, 2011, to and continuing through on or about May 20, 2015, in the Southern District of Alabama, Southern Divisions, and elsewhere, the defendant,

**XIULU RUAN, M.D.,**

aided and abetted by Christopher Manfuso, who is not named as a defendant herein, and by others both known and unknown to the Grand Jury did knowingly and willfully offer, pay, solicit, and receive any remuneration (including any kickback, bribe, or rebate), directly and indirectly, overtly and covertly, in cash and in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole and in part under a Federal health care program, and in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program.

105.　The payments made by IPM and CRM to **RUAN** included, but were not limited to, the following:

| Count | Date | Recipient | Check Number | Amount |
|---|---|---|---|---|
| Fourteen | 02/25/2013 | Ruan Companies, LLC | 12469 | $53,000.00 |

| Fifteen | 11/18/2014 | Ruan Companies, LLC | | 1452 | $80,000.00 |
| Sixteen | 01/21/2015 | Ruan Companies, LLC | | 1555 | $80,000.00 |

106. These kickbacks were paid, at least in part, to induce or in exchange dispensing drugs provide by IPM, and CRM, to patients whose workers compensation coverage was paid for, in whole or in part, by a federal healthcare program.

107. In violation of Title 42, United States Code, Section 1320a-7b(b).

## COUNTS SEVENTEEN THROUGH NINETEEN
### Anti-Kickback Statute Violations
### 42 U.S.C. §1320a-7b

108. The Grand Jury incorporates numbered paragraphs 1–38 of this Superseding Indictment as if fully set forth herein.

109. From on or about March 5, 2011, to and continuing through on or about May 20, 2015, in the Southern District of Alabama, Southern Divisions, and elsewhere, the defendant,

**JOHN PATRICK COUCH, M.D.,**

aided and abetted by Christopher Manfuso, who is not named as a defendant herein, and by others both known and unknown to the Grand Jury did knowingly and willfully offer, pay, solicit, and receive any remuneration (including any kickback, bribe, or rebate), directly and indirectly, overtly and covertly, in cash and in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole and in part under a Federal health care program, and in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program.

110. The payments made by IPM and CRM to **COUCH** included, but were not limited to, the following:

| Count | Date | Recipient | Check Number | Amount |
|-------|------|-----------|--------------|--------|
| Seventeen | 09/20/2012 | John Patrick Couch, M.D. | 11667 | $38,543.70 |
| Eighteen | 09/18/2013 | Physicians Compounding Solutions, LLC | 13570 | $21,860.95 |
| Nineteen | 08/15/2014 | Physicians Compounding Solutions, LLC | 1280 | $33,020.85 |

111.    These kickbacks were paid, at least in part, to induce or in exchange dispensing drugs provide by IPM, and CRM, to patients whose workers compensation coverage was paid for, in whole or in part, by a federal healthcare program.

112.    In violation of Title 42, United States Code, Section 1320a-7b(b).

## FORFEITURE NOTICE

Pursuant to Rule 32.2(a), Fed. R. Crim. P., the allegations contained in Counts One through Nineteen of this Superseding Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture.

## RACKETEERING FORFEITURE (COUNT ONE)
### (RICO CONSPIRACY)

The defendants, **JOHN PATRICK COUCH** and **XIULU RUAN**, are hereby notified that, upon conviction of the violation of Title 18, United States Code, Section 1962, as charged in Count One of this Superseding Indictment, the defendants shall forfeit, pursuant to Title 18, United States Code, Section 1963:

a)      All interests acquired and maintained in violation of Title 18, United States Code, Section 1962;

b)      All interests in, securities of, claims against, and property and contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

c)      All property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

The property subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2)(A) – (D), (a)(3), and Title 21, United States Code, Section 853(a)(3), includes, but is not limited to, the following assets:

A. **XIULU RUAN's** Alabama Medical License, number MD25262;

B. **JOHN PATRICK COUCH's** Alabama Medical License, number MD20444;

C. **JOHN PATRICK COUCH's** Georgia Medical License, number 42552;

D. **JOHN PATRICK COUCH's** California Medical License, number 82209;

E. A sum of money in the amount of at least $40,000,000.00 in United States currency, representing the total amount of proceeds obtained by the defendants, as a result of their violation of Title 18, United States Code, Section 1962;

F. The contents of the following accounts associated with PPSA and C&R Pharmacy:

1. Wells Fargo account ending in x6971, in the name of Physician's Pain Specialist of Alabama (PPSA);

2. Wells Fargo account ending in x1719, in the name of C&R, L.L.C.;

3. Wells Fargo account ending in x7003, in the name of C&R Pharmacy, L.L.C.;

4. $25,595.71 from JPMorganChase check ending 2682, payable to C&R Pharmacy; and

5. $175,773.13 from Bank of America account ending 7563, payable to C&R Pharmacy.

G. The contents of the following accounts associated with **XIULU RUAN**:

1. State Bank & Trust account ending in x5553, in the name of XLR Exotic Autos, L.L.C.;

2. State Bank & Trust account ending in x5264, in the name of Ruan Companies, L.L.C;

3. State Bank & Trust account ending in x6197 in the name of Xiulu Ruan;

4. Wells Fargo account ending in x1921, in the name of XLR Properties, L.L.C.;

5.   Wells Fargo account ending in x1212, in the name of Physicians Weight Loss and Wellness, L.L.C.;

6.   Community Bank account ending in x9013, in the name of Xiulu Ruan;

7.   Capital One Sharebuilder Investment Account ending in x6197-01 in the name of Xiulu Ruan;

8.   Voya Financial 401K account plan # ending in x7645 in the name of Xiulu Ruan;

9.   College Counts 529 Fund, account ending in x3712, owned by Xiulu Ruan;

10.   College Counts 529 Fund, account ending in x3713, owned by Xiulu Ruan;

H. The contents of the following accounts associated with **JOHN PATRICK COUCH**:

1.   Wells Fargo account ending in x0015, in the name of John Patrick Couch;

2.   Wells Fargo account ending in x6997, in the name of Physician's Compounding Solutions, L.L.C.;

3.   Wells Fargo Account ending in x9824, in the name of John Patrick Couch;

4.   Wells Fargo account ending in x6989, in the name of JPC Properties, L.L.C.;

5.   Trustmark account ending in x0135, in the name of John Patrick Couch, M.D.;

6.   E-Trade Investment account ending in x4755, in the name of J.P. Couch;

7.   E-Trade Investment account ending in x8497, in the name of John P. Couch;

8. Voya Financial 401K account plan # ending in x7645, in the name of John Couch;

9. Allianz Annuity account ending in x6369, in the name of John P. Couch;

10. Allianz Annuity account ending in x5389, in the name of John P. Couch;

11. College Counts 529 Fund, account ending in x2423, owned by John P. Couch;

12. College Counts 529 Fund, account ending in x8641; owned by John P. Couch;

13. College Counts 529 Fund, account ending in x2406; owned by John P. Couch.

I. The following vehicles associated with **XIULU RUAN:**

1. Aston Martin DB9 Volante, VIN #SCFAB02AX6GB04617;
2. Audi R8 Spyder VIN #WUATNAFG2BN002379
3. 2007 Bentley Continental GT, VIN #SCBDR33W47C048251;
4. 1987 BMW M6, VIN #WBAEE1400H2560721;
5. Ferrari F430 Convertible, VIN #ZFFEW59A070156841;
6. Ferrari 599 GTB, VIN #ZFFFC60A270150619;
7. 1994 Lamborghini Diablo, VIN #ZA9DU07P2RLA12227;
8. 2008 Lamborghini, VIN #ZHWBU47M78LA02880;
9. 2005 Mercedes SLR, VIN #WDDAJ76E45M000070;
10. 2011 Mercedes Model SLS AMG, VIN #WDDRJ7HA2BA002474;
11. 2013 Mercedes SLS AMG GT, VIN #WDDRK7JA0DA010048;
12. Shelby Series 1, VIN #5CXSA1816XL000159;
13. Spyker C8 Laviolette VIN #XL9BA11G69Z363202;
14. 2005 Bently Armage (VIN #SCBLC43FX5CX10639);
15. 2005 Bentley Continental GT (VIN SCBCR63W65C024205);
16. 2006 Saleen S7 (VIN 1S9SB18126S000074);
17. 2007 Porsche 911 GT3 (VINWP0AC29997S792687);
18. 2005 Porsche 9TC (VIN WP0CB29965S675240)

J. The following vehicles associated with **JOHN PATRICK COUCH:**

1. 2008 Cadillac Escalade, VIN 1GYFK66848R221963;
2. 2013 Maserati, VIN ZAM45VLA3D0072574;

3.  2015 Porsche 911, VIN #WP0BB2A96FS135380;
4.  2006 Porsche 911 Cabriolet (VIN WP0CB299X6S765878)
5.  1969 Chevrolet Corvette Sting Ray (VIN 194379S707748)

K.  The following real property associated with **XIULU RUAN**:

1.  2800 Churchbell Ct. Mobile, Alabama;
2.  1323 Leroy Stevens Road, Mobile, Alabama, 36695
    (Mobile County), (Parcel number
    R022707253000005.002), and which is more particularly
    described as: Lot 2 Byrum Family Division Map Book 129
    Page 35.

L.  The following real property associated with **JOHN PATRICK COUCH**:

1.  319 Woodbridge Drive Daphne, Alabama;
2.  Unit #7, 25040 Perdido Beach Blvd Orange Beach, Alabama;
3.  Unit C-804, 28105 Perdido Beach Blvd Orange Beach, Alabama.

All pursuant to Title 18, United States Code, Sections 1963(a)(1), (a)(2)(A)–(D), and (a)(3), and

Title 21, United States Code, Section 853(a)(3).

### Conspiracy to Distribute and Dispense Forfeiture (Count Two)

The allegations contained in Count Two of this Indictment are hereby re-alleged and

incorporated by reference for the purpose of alleging forfeiture pursuant to Title 21, United

States Code, Section 853(a)(1) and (a)(2).

Upon conviction of an offense as set forth in Count Two of this Indictment, the

defendants **JOHN PATRICK COUCH** and **XIULU RUAN** shall forfeit to the United States of

America, pursuant to Title 21, United States Code, Section 853(a)(1) and (a)(2), any property,

real or personal, which constitutes or is derived from any proceeds the defendants **COUCH** and

**RUAN,** obtained, directly or indirectly, as the result of such violation(s), and any property used,

or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such

violation(s). The property to be forfeited includes, **but is not limited to**, the following:

A.  **XIULU RUAN's** Alabama Medical License, number MD25262;

B. **JOHN PATRICK COUCH's** Alabama Medical License, number MD20444;

C. **JOHN PATRICK COUCH's** Georgia Medical License, number 42552;

D. **JOHN PATRICK COUCH's** California Medical License, number 82209;

E. A money judgment against **JOHN PATRICK COUCH** and **XIULU RUAN** representing a sum of money equal to the proceeds the defendants obtained, directly or indirectly, as a result of a violation of Title 21, U.S.C. § 846.

F. The contents of the following accounts associated with PPSA and C&R Pharmacy:

> 1. Wells Fargo account ending in x6971, in the name of Physician's Pain Specialist of Alabama (PPSA);

> 2. Wells Fargo account ending in x1719, in the name of C&R, L.L.C.;

> 3. Wells Fargo account ending in x7003, in the name of C&R Pharmacy, L.L.C.;

> 4. $25,595.71 from JPMorganChase check ending 2682, payable to C&R Pharmacy; and

> 5. $175,773.13 from Bank of America account ending 7563, payable to C&R Pharmacy.

G. The contents of the following accounts associated with **XIULU RUAN**:

> 1. State Bank & Trust account ending in x5553, in the name of XLR Exotic Autos, L.L.C.;

> 2. State Bank & Trust account ending in x5264, in the name of Ruan Companies, L.L.C;

> 3. State Bank & Trust account ending in x6197 in the name of Xiulu Ruan;

> 4. Wells Fargo account ending in x1921, in the name of XLR Properties, L.L.C.;

> 5. Wells Fargo account ending in x1212, in the name of

Physicians Weight Loss and Wellness, L.L.C.;

6. Community Bank account ending in x9013, in the name of Xiulu Ruan;

7. Capital One Sharebuilder Investment Account ending in x6197-01 in the name of Xiulu Ruan;

8. Voya Financial 401K account plan # ending in x7645 in the name of Xiulu Ruan;

9. College Counts 529 Fund, account ending in x3712, owned by Xiulu Ruan;

10. College Counts 529 Fund, account ending in x3713, owned by Xiulu Ruan;

H. The contents of the following accounts associated with **JOHN PATRICK COUCH**:

1. Wells Fargo account ending in x0015, in the name of John Patrick Couch;

2. Wells Fargo account ending in x6997, in the name of Physician's Compounding Solutions, L.L.C.;

3. Wells Fargo Account ending in x9824, in the name of John Patrick Couch;

4. Wells Fargo account ending in x6989, in the name of JPC Properties, L.L.C.;

5. Trustmark account ending in x0135, in the name of John Patrick Couch, M.D.;

6. E-Trade Investment account ending in x4755, in the name of J.P. Couch;

7. E-Trade Investment account ending in x8497, in the name of John P. Couch;

8. Voya Financial 401K account plan # ending in x7645, in the name of John Couch;

9. Allianz Annuity account ending in x6369, in the name of John P. Couch;

10. Allianz Annuity account ending in x5389, in the name of John P. Couch;

11. College Counts 529 Fund, account ending in x2423, owned by John P. Couch;

12. College Counts 529 Fund, account ending in x8641; owned by John P. Couch;

13. College Counts 529 Fund, account ending in x2406; owned by John P. Couch.

I. The following vehicles associated with **XIULU RUAN:**

1. Aston Martin DB9 Volante, VIN #SCFAB02AX6GB04617;
2. Audi R8 Spyder VIN #WUATNAFG2BN002379
3. 2007 Bentley Continental GT, VIN #SCBDR33W47C048251;
4. 1987 BMW M6, VIN #WBAEE1400H2560721;
5. Ferrari F430 Convertible, VIN #ZFFEW59A070156841;
6. Ferrari 599 GTB, VIN #ZFFFC60A270150619;
7. 1994 Lamborghini Diablo, VIN #ZA9DU07P2RLA12227;
8. 2008 Lamborghini, VIN #ZHWBU47M78LA02880;
9. 2005 Mercedes SLR, VIN #WDDAJ76E45M000070;
10. 2011 Mercedes Model SLS AMG, VIN #WDDRJ7HA2BA002474;
11. 2013 Mercedes SLS AMG GT, VIN #WDDRK7JA0DA010048;
12. Shelby Series 1, VIN #5CXSA1816XL000159;
13. Spyker C8 Laviolette VIN #XL9BA11G69Z363202;
14. 2005 Bently Armage (VIN #SCBLC43FX5CX10639);
15. 2005 Bentley Continental GT (VIN SCBCR63W65C024205);
16. 2006 Saleen S7 (VIN 1S9SB18126S000074);
17. 2007 Porsche 911 GT3 (VINWP0AC29997S792687);
18. 2005 Porsche 9TC (VIN WP0CB29965S675240)

J. The following vehicles associated with **JOHN PATRICK COUCH:**

1. 2008 Cadillac Escalade, VIN 1GYFK66848R221963;
2. 2013 Maserati, VIN ZAM45VLA3D0072574;
3. 2015 Porsche 911, VIN #WP0BB2A96FS135380;
4. 2006 Porsche 911 Cabriolet (VIN WP0CB299X6S765878)
5. 1969 Chevrolet Corvette Sting Ray (VIN 194379S707748)

K. The following real property associated with **XIULU RUAN**:

    1.     2800 Churchbell Ct. Mobile, Alabama;

    2.     1323 Leroy Stevens Road, Mobile, Alabama, 36695 (Mobile County), (Parcel number R022707253000005.002), and which is more particularly described as: Lot 2 Byrum Family Division Map Book 129 Page 35.

L. The following real property associated with **JOHN PATRICK COUCH**:

    1.     319 Woodbridge Drive Daphne, Alabama;

    2.     Unit #7, 25040 Perdido Beach Blvd Orange Beach, Alabama;

    3.     Unit C-804, 28105 Perdido Beach Blvd Orange Beach, Alabama.

All pursuant to Title 21, United States Code, Sections 853(a)(1) and (a)(2).

### CONSPIRACY TO COMMIT HEALTH CARE FRAUD FORFEITURE (COUNT THREE), AND CONSPIRACY TO COMMIT WIRE AND MAIL FRAUD FORFEITURE (COUNT SIX)

The allegations contained in Counts Three and Six of this Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture.

Pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), if convicted of the offense set forth in Count Three or Count Six, defendants **JOHN PATRICK COUCH** and **XIULU RUAN** shall forfeit property, real or personal, which constitutes or is derived from proceeds traceable to the offense, or a conspiracy to commit such offense. The property to be forfeited includes, **but is not limited to**, the following:

A. A money judgment against **JOHN PATRICK COUCH** and **XIULU RUAN** representing a sum of money equal to the proceeds the defendants obtained, directly or indirectly, as a result of a violation of Title 18, U.S.C. § 1349.

B. The contents of the following accounts associated with PPSA and C&R Pharmacy:

    1.    Wells Fargo account ending in x6971, in the name of

Physician's Pain Specialist of Alabama (PPSA);

2. Wells Fargo account ending in x1719, in the name of C&R, L.L.C.;

3. Wells Fargo account ending in x7003, in the name of C&R Pharmacy, L.L.C.;

4. $25,595.71 from JPMorganChase check ending 2682, payable to C&R Pharmacy; and

5. $175,773.13 from Bank of America account ending 7563, payable to C&R Pharmacy.

C. The contents of the following accounts associated with **XIULU RUAN**:

1. State Bank & Trust account ending in x5553, in the name of XLR Exotic Autos, L.L.C.;

2. State Bank & Trust account ending in x5264, in the name of Ruan Companies, L.L.C;

3. State Bank & Trust account ending in x6197 in the name of Xiulu Ruan;

4. Wells Fargo account ending in x1921, in the name of XLR Properties, L.L.C.;

5. Wells Fargo account ending in x1212, in the name of Physicians Weight Loss and Wellness, L.L.C.;

6. Community Bank account ending in x9013, in the name of Xiulu Ruan;

7. Capital One Sharebuilder Investment Account ending in x6197-01 in the name of Xiulu Ruan;

8. Voya Financial 401K account plan # ending in x7645 in the name of Xiulu Ruan;

9. College Counts 529 Fund, account ending in x3712, owned by Xiulu Ruan;

10. College Counts 529 Fund, account ending in x3713, owned by

Xiulu Ruan;

D. The contents of the following accounts associated with **JOHN PATRICK COUCH**:

1. Wells Fargo account ending in x0015, in the name of John Patrick Couch;

2. Wells Fargo account ending in x6997, in the name of Physician's Compounding Solutions, L.L.C.;

3. Wells Fargo Account ending in x9824, in the name of John Patrick Couch;

4. Wells Fargo account ending in x6989, in the name of JPC Properties, L.L.C.;

5. Trustmark account ending in x0135, in the name of John Patrick Couch, M.D.;

6. E-Trade Investment account ending in x4755, in the name of J.P. Couch;

7. E-Trade Investment account ending in x8497, in the name of John P. Couch;

8. Voya Financial 401K account plan # ending in x7645, in the name of John Couch;

9. Allianz Annuity account ending in x6369, in the name of John P. Couch;

10. Allianz Annuity account ending in x5389, in the name of John P. Couch;

11. College Counts 529 Fund, account ending in x2423, owned by John P. Couch;

12. College Counts 529 Fund, account ending in x8641; owned by John P. Couch;

13. College Counts 529 Fund, account ending in x2406; owned by John P. Couch.

E. The following vehicles associated with **XIULU RUAN:**

1. Aston Martin DB9 Volante, VIN #SCFAB02AX6GB04617;
2. Audi R8 Spyder VIN #WUATNAFG2BN002379
3. 2007 Bentley Continental GT, VIN #SCBDR33W47C048251;
4. 1987 BMW M6, VIN #WBAEE1400H2560721;
5. Ferrari F430 Convertible, VIN #ZFFEW59A070156841;
6. Ferrari 599 GTB, VIN #ZFFFC60A270150619;
7. 1994 Lamborghini Diablo, VIN #ZA9DU07P2RLA12227;
8. 2008 Lamborghini, VIN #ZHWBU47M78LA02880;
9. 2005 Mercedes SLR, VIN #WDDAJ76E45M000070;
10. 2011 Mercedes Model SLS AMG, VIN #WDDRJ7HA2BA002474;
11. 2013 Mercedes SLS AMG GT, VIN #WDDRK7JA0DA010048;
12. Shelby Series 1, VIN #5CXSA1816XL000159;
13. Spyker C8 Laviolette VIN #XL9BA11G69Z363202;
14. 2005 Bently Armage (VIN #SCBLC43FX5CX10639);
15. 2005 Bentley Continental GT (VIN SCBCR63W65C024205);
16. 2006 Saleen S7 (VIN 1S9SB18126S000074);
17. 2007 Porsche 911 GT3 (VINWP0AC29997S792687);
18. 2005 Porsche 9TC  (VIN WP0CB29965S675240)

F. The following vehicles associated with **JOHN PATRICK COUCH:**

1. 2008 Cadillac Escalade, VIN 1GYFK66848R221963;
2. 2013 Maserati, VIN ZAM45VLA3D0072574;
3. 2015 Porsche 911, VIN #WP0BB2A96FS135380;
4. 2006 Porsche 911 Cabriolet (VIN WP0CB299X6S765878)
5. 1969 Chevrolet Corvette Sting Ray (VIN 194379S707748)

G. The following real property associated with **XIULU RUAN:**

1. 2800 Churchbell Ct. Mobile, Alabama;
2. 1323 Leroy Stevens Road, Mobile, Alabama, 36695
   (Mobile County), (Parcel number
   R022707253000005.002), and which is more particularly
   described as:  Lot 2 Byrum Family Division Map Book 129
   Page 35.

H. The following real property associated with **JOHN PATRICK COUCH:**

1. 319 Woodbridge Drive Daphne, Alabama;
2. Unit #7, 25040 Perdido Beach Blvd Orange Beach, Alabama;
3. Unit C-804, 28105 Perdido Beach Blvd Orange Beach, Alabama.

All pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and Title

28, United States Code, Section 2461(c).

## CONSPIRACY TO COMMIT MONETARY TRANSACTIONS IN PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY FORFEITURE (COUNT FOUR); AND MONEY LAUNDERING FORFEITURE (COUNTS ELEVEN-THIRTEEN)

Pursuant to Title 18, United States Code, Section 982(a)(1), if defendant **XIULU RUAN** is convicted of Counts 4 or Counts 11-13, he shall forfeit to the United States all property, real or personal, involved in such offense(s) and all property traceable to such property.

The Property to be forfeited includes, but is not limited to, the following:

A.  A money judgment against **XIULU RUAN**, representing a sum of money equal to all property, real or personal, involved in such offense(s), and all property traceable to such property.

B.  The contents of the following accounts associated with PPSA and C&R Pharmacy:

      1.  Wells Fargo account ending in x6971, in the name of Physician's Pain Specialist of Alabama (PPSA);

      2.  Wells Fargo account ending in x1719, in the name of C&R, L.L.C.;

      3.  Wells Fargo account ending in x7003, in the name of C&R Pharmacy, L.L.C.

      4.  $25,595.71 from JPMorganChase check ending 2682, payable to C&R Pharmacy; and

      5.  $175,773.13 from Bank of America account ending 7563, payable to C&R Pharmacy.

C.  The contents of the following accounts associated with **XIULU RUAN**:

      1.  State Bank & Trust account ending in x5553, in the name of XLR Exotic Autos, L.L.C.;

      2.  State Bank & Trust account ending in x5264, in the name of Ruan Companies, L.L.C;

3. State Bank & Trust account ending in x6197 in the name of Xiulu Ruan;

4. Wells Fargo account ending in x1921, in the name of XLR Properties, L.L.C.;

5. Wells Fargo account ending in x1212, in the name of Physicians Weight Loss and Wellness, L.L.C.;

6. Community Bank account ending in x9013, in the name of Xiulu Ruan;

7. Capital One Sharebuilder Investment Account ending in x6197-01 in the name of Xiulu Ruan;

8. Voya Financial 401K account plan # ending in x7645 in the name of Xiulu Ruan;

9. College Counts 529 Fund, account ending in x3712, owned by Xiulu Ruan;

10. College Counts 529 Fund, account ending in x3713, owned by Xiulu Ruan;

D. The following vehicles associated with **XIULU RUAN:**

1. Aston Martin DB9 Volante, VIN #SCFAB02AX6GB04617;
2. Audi R8 Spyder VIN #WUATNAFG2BN002379
3. 2007 Bentley Continental GT, VIN #SCBDR33W47C048251;
4. 1987 BMW M6, VIN #WBAEE1400H2560721;
5. Ferrari F430 Convertible, VIN #ZFFEW59A070156841;
6. Ferrari 599 GTB, VIN #ZFFFC60A270150619;
7. 1994 Lamborghini Diablo, VIN #ZA9DU07P2RLA12227;
8. 2008 Lamborghini, VIN #ZHWBU47M78LA02880;
9. 2005 Mercedes SLR, VIN #WDDAJ76E45M000070;
10. 2011 Mercedes Model SLS AMG, VIN #WDDRJ7HA2BA002474;
11. 2013 Mercedes SLS AMG GT, VIN #WDDRK7JA0DA010048;
12. Shelby Series 1, VIN #5CXSA1816XL000159;
13. Spyker C8 Laviolette #XL9BA11G69Z363202;
14. 2005 Bently Armage (VIN SCBLC43FX5CX10639);
15. 2005 Bentley Continental GT (VIN SCBCR63W65C024205);
16. 2006 Saleen S7 (VIN 1S9SB18126S000074);
17. 2007 Porsche 911 GT3 (VINWP0AC29997S792687)
18. 2005 Porsche 9TC (VIN WP0CB29965S675240)

E. The following real property associated with **XIULU RUAN**:

    1.    2800 Churchbell Ct. Mobile, Alabama;

    2.    1323 Leroy Stevens Road, Mobile, Alabama, 36695 (Mobile County), (Parcel number R022707253000005.002), and which is more particularly described as: Lot 2 Byrum Family Division Map Book 129 Page 35.

All pursuant to Title 18, United States Code, Section 982(a)(1).

### CONSPIRACY TO VIOLATE ANTI-KICKBACK STATUTES FORFEITURE (COUNT FIVE)

The allegations contained in Count 5 are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

Upon conviction of the offense in violation of Title 18, United States Code, Section 371 set forth in Count 5, of this Superseding Indictment, the defendants, **JOHN PATRICK COUCH** and **XIULU RUAN** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived, from proceeds traceable to a violation of an offense constituting specified unlawful activity, including an act or activity constituting an offense involving a Federal healthcare offense under Title 18, United States Code, Section 1956(c)(7)(F), or a conspiracy to commit such an offense. The property to be forfeited includes, but is not limited to, the following:

A. A money judgment against **JOHN PATRICK COUCH** and **XIULU RUAN** representing a sum of money equal to the proceeds the defendants obtained as a result of such, or proceeds traceable to such violation.

B. The contents of the following accounts associated with PPSA and C&R Pharmacy:

    1.    Wells Fargo account ending in x6971, in the name of Physician's Pain Specialist of Alabama (PPSA);

2. Wells Fargo account ending in x1719, in the name of C&R, L.L.C.;

3. Wells Fargo account ending in x7003, in the name of C&R Pharmacy, L.L.C.;

4. $25,595.71 from JPMorganChase check ending 2682, payable to C&R Pharmacy; and

5. $175,773.13 from Bank of America account ending 7563, payable to C&R Pharmacy.

C. The contents of the following accounts associated with **XIULU RUAN**:

1. State Bank & Trust account ending in x5553, in the name of XLR Exotic Autos, L.L.C.;

2. State Bank & Trust account ending in x5264, in the name of Ruan Companies, L.L.C;

3. State Bank & Trust account ending in x6197 in the name of Xiulu Ruan;

4. Wells Fargo account ending in x1921, in the name of XLR Properties, L.L.C.;

5. Wells Fargo account ending in x1212, in the name of Physicians Weight Loss and Wellness, L.L.C.;

6. Community Bank account ending in x9013, in the name of Xiulu Ruan;

7. Capital One Sharebuilder Investment Account ending in x6197-01 in the name of Xiulu Ruan;

8. Voya Financial 401K account plan # ending in x7645 in the name of Xiulu Ruan;

9. College Counts 529 Fund, account ending in x3712, owned by Xiulu Ruan;

10. College Counts 529 Fund, account ending in x3713, owned by Xiulu Ruan;

D. The contents of the following accounts associated with **JOHN PATRICK COUCH**:

1. Wells Fargo account ending in x0015, in the name of John Patrick Couch;

2. Wells Fargo account ending in x6997, in the name of Physician's Compounding Solutions, L.L.C.;

3. Wells Fargo Account ending in x9824, in the name of John Patrick Couch;

4. Wells Fargo account ending in x6989, in the name of JPC Properties, L.L.C.;

5. Trustmark account ending in x0135, in the name of John Patrick Couch, M.D.;

6. E-Trade Investment account ending in x4755, in the name of J.P. Couch;

7. E-Trade Investment account ending in x8497, in the name of John P. Couch;

8. Voya Financial 401K account plan # ending in x7645, in the name of John Couch;

9. Allianz Annuity account ending in x6369, in the name of John P. Couch;

10. Allianz Annuity account ending in x5389, in the name of John P. Couch;

11. College Counts 529 Fund, account ending in x2423, owned by John P. Couch;

12. College Counts 529 Fund, account ending in x8641; owned by John P. Couch;

13. College Counts 529 Fund, account ending in x2406; owned by John P. Couch.

E. The following vehicles associated with **XIULU RUAN:**

1. Aston Martin DB9 Volante, VIN #SCFAB02AX6GB04617;
2. Audi R8 Spyder VIN #WUATNAFG2BN002379
3. 2007 Bentley Continental GT, VIN #SCBDR33W47C048251;
4. 1987 BMW M6, VIN #WBAEE1400H2560721;
5. Ferrari F430 Convertible, VIN #ZFFEW59A070156841;
6. Ferrari 599 GTB, VIN #ZFFFC60A270150619;
7. 1994 Lamborghini Diablo, VIN #ZA9DU07P2RLA12227;
8. 2008 Lamborghini, VIN #ZHWBU47M78LA02880;
9. 2005 Mercedes SLR, VIN #WDDAJ76E45M000070;
10. 2011 Mercedes Model SLS AMG, VIN #WDDRJ7HA2BA002474;
11. 2013 Mercedes SLS AMG GT, VIN #WDDRK7JA0DA010048;
12. Shelby Series 1, VIN #5CXSA1816XL000159;
13. Spyker C8 Laviolette VIN #XL9BA11G69Z363202;
14. 2005 Bently Armage (VIN #SCBLC43FX5CX10639);
15. 2005 Bentley Continental GT (VIN SCBCR63W65C024205);
16. 2006 Saleen S7 (VIN 1S9SB18126S000074);
17. 2007 Porsche 911 GT3 (VINWP0AC29997S792687);
18. 2005 Porsche 9TC (VIN WP0CB29965S675240)

F The following vehicles associated with **JOHN PATRICK COUCH:**

1. 2008 Cadillac Escalade, VIN 1GYFK66848R221963;
2. 2013 Maserati, VIN ZAM45VLA3D0072574;
3. 2015 Porsche 911, VIN #WP0BB2A96FS135380;
4. 2006 Porsche 911 Cabriolet (VIN WP0CB299X6S765878)
5. 1969 Chevrolet Corvette Sting Ray (VIN 194379S707748)

G. The following real property associated with **XIULU RUAN:**

1. 2800 Churchbell Ct. Mobile, Alabama;
2. 1323 Leroy Stevens Road, Mobile, Alabama, 36695
   (Mobile County), (Parcel number
   R022707253000005.002), and which is more particularly
   described as: Lot 2 Byrum Family Division Map Book 129
   Page 35.

H. The following real property associated with **JOHN PATRICK COUCH:**

1. 319 Woodbridge Drive Daphne, Alabama;
2. Unit #7, 25040 Perdido Beach Blvd Orange Beach, Alabama;
3. Unit C-804, 28105 Perdido Beach Blvd Orange Beach, Alabama.

All pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and Title

28, United States Code, Section 2461(c).

### ANTI-KICKBACK STATUTE VIOLATIONS FORFEITURE (COUNTS FOURTEEN-NINETEEN)

The allegations contained in Counts 14-19 are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

Upon conviction of the offense in violation of Title 42, United States Code, Section 1320(a)-7(b), set forth herein in Counts 14-16 as to defendant **XIULU RUAN**, and Counts 17–19 as to defendant **JOHN PATRICK COUCH**, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived, from proceeds traceable to a violation of an offense constituting specified unlawful activity, including an act or activity constituting an offense involving a Federal healthcare offense under Title 18, United States Code, Section 1956(c)(7)(F), or a conspiracy to commit such an offense.. The property to be forfeited includes, but is not limited to, the following:

A. A money judgment against **JOHN PATRICK COUCH** and **XIULU RUAN** representing a sum of money equal to the proceeds the defendants obtained as a result of such, or proceeds traceable to such violation.

B. The contents of the following accounts associated with PPSA and C&R Pharmacy:

1. Wells Fargo account ending in x6971, in the name of Physician's Pain Specialist of Alabama (PPSA);

2. Wells Fargo account ending in x1719, in the name of C&R, L.L.C.;

3. Wells Fargo account ending in x7003, in the name of C&R Pharmacy, L.L.C.;

4. $25,595.71 from JPMorganChase check ending 2682, payable

to C&R Pharmacy; and

     5.  $175,773.13 from Bank of America account ending 7563, payable to C&R Pharmacy.

C.  The contents of the following accounts associated with **XIULU RUAN**:

     1.  State Bank & Trust account ending in x5553, in the name of XLR Exotic Autos, L.L.C.;

     2.  State Bank & Trust account ending in x5264, in the name of Ruan Companies, L.L.C;

     3.  State Bank & Trust account ending in x6197 in the name of Xiulu Ruan;

     4.  Wells Fargo account ending in x1921, in the name of XLR Properties, L.L.C.;

     5.  Wells Fargo account ending in x1212, in the name of Physicians Weight Loss and Wellness, L.L.C.;

     6.  Community Bank account ending in x9013, in the name of Xiulu Ruan;

     7.  Capital One Sharebuilder Investment Account ending in x6197-01 in the name of Xiulu Ruan;

     8.  Voya Financial 401K account plan # ending in x7645 in the name of Xiulu Ruan;

     9.  College Counts 529 Fund, account ending in x3712, owned by Xiulu Ruan;

     10. College Counts 529 Fund, account ending in x3713, owned by Xiulu Ruan;

D.  The contents of the following accounts associated with **JOHN PATRICK COUCH**:

     1.  Wells Fargo account ending in x0015, in the name of John Patrick Couch;

2. Wells Fargo account ending in x6997, in the name of Physician's Compounding Solutions, L.L.C.;

3. Wells Fargo Account ending in x9824, in the name of John Patrick Couch;

4. Wells Fargo account ending in x6989, in the name of JPC Properties, L.L.C.;

5. Trustmark account ending in x0135, in the name of John Patrick Couch, M.D.;

6. E-Trade Investment account ending in x4755, in the name of J.P. Couch;

7. E-Trade Investment account ending in x8497, in the name of John P. Couch;

8. Voya Financial 401K account plan # ending in x7645, in the name of John Couch;

9. Allianz Annuity account ending in x6369, in the name of John P. Couch;

10. Allianz Annuity account ending in x5389, in the name of John P. Couch;

11. College Counts 529 Fund, account ending in x2423, owned by John P. Couch;

12. College Counts 529 Fund, account ending in x8641; owned by John P. Couch;

13. College Counts 529 Fund, account ending in x2406; owned by John P. Couch.

E. The following vehicles associated with **XIULU RUAN**:

    1. Aston Martin DB9 Volante, VIN #SCFAB02AX6GB04617;
    2. Audi R8 Spyder VIN #WUATNAFG2BN002379
    3. 2007 Bentley Continental GT, VIN #SCBDR33W47C048251;
    4. 1987 BMW M6, VIN #WBAEE1400H2560721;
    5. Ferrari F430 Convertible, VIN #ZFFEW59A070156841;
    6. Ferrari 599 GTB, VIN #ZFFFC60A270150619;

7. 1994 Lamborghini Diablo, VIN #ZA9DU07P2RLA12227;
8. 2008 Lamborghini, VIN #ZHWBU47M78LA02880;
9. 2005 Mercedes SLR, VIN #WDDAJ76E45M000070;
10. 2011 Mercedes Model SLS AMG, VIN #WDDRJ7HA2BA002474;
11. 2013 Mercedes SLS AMG GT, VIN #WDDRK7JA0DA010048;
12. Shelby Series 1, VIN #5CXSA1816XL000159;
13. Spyker C8 Laviolette VIN #XL9BA11G69Z363202;
14. 2005 Bently Armage (VIN #SCBLC43FX5CX10639);
15. 2005 Bentley Continental GT (VIN SCBCR63W65C024205);
16. 2006 Saleen S7 (VIN 1S9SB18126S000074);
17. 2007 Porsche 911 GT3 (VINWP0AC29997S792687);
18. 2005 Porsche 9TC (VIN WP0CB29965S675240)

F. The following vehicles associated with **JOHN PATRICK COUCH:**

1. 2008 Cadillac Escalade, VIN 1GYFK66848R221963;
2. 2013 Maserati, VIN ZAM45VLA3D0072574;
3. 2015 Porsche 911, VIN #WP0BB2A96FS135380;
4. 2006 Porsche 911 Cabriolet (VIN WP0CB299X6S765878)
5. 1969 Chevrolet Corvette Sting Ray (VIN 194379S707748)

G. The following real property associated with **XIULU RUAN:**

1. 2800 Churchbell Ct. Mobile, Alabama;
2. 1323 Leroy Stevens Road, Mobile, Alabama, 36695 (Mobile County), (Parcel number R022707253000005.002), and which is more particularly described as: Lot 2 Byrum Family Division Map Book 129 Page 35.

H. The following real property associated with **JOHN PATRICK COUCH:**

1. 319 Woodbridge Drive Daphne, Alabama;
2. Unit #7, 25040 Perdido Beach Blvd Orange Beach, Alabama;
3. Unit C-804, 28105 Perdido Beach Blvd Orange Beach, Alabama.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code Section, 2461(c).

### SUBSTITUTE ASSETS

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants, **JOHN PATRICK COUCH** and **XIULU RUAN,**

(a) cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), and Section 982(b)(1), Title 21, United States Code, Section 853(p), as incorporated by 28 U.S.C. § 2461, and Rule 32.2 Fed. R. Crim. P., to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

A TRUE BILL

███████████████████████████

FOREMAN, UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF ALABAMA

KENYEN R. BROWN
UNITED STATES ATTORNEY
by:

_____
Vicki M. Davis
Assistant U.S. Attorney
Chief, Criminal Division

_____
Deborah A. Griffin
Assistant U.S. Attorney

_____
Christopher J. Bodnar
Assistant U.S. Attorney

OCTOBER 2015

53